# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STATE OF WISCONSIN,<br><br>          Plaintiff,<br><br>   v.<br><br>3M COMPANY (a/k/a Minnesota Mining and Manufacturing Company); E. I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; DUPONT DE NEMOURS, INC.; BUCKEYE FIRE EQUIPMENT COMPANY; KIDDE-FENWAL, INC.; NATIONAL FOAM, INC.; TYCO FIRE PRODUCTS, LP; CHEMGUARD, INC.; AMEREX CORPORATION; CHEMDESIGN PRODUCTS, INC.; BASF CORPORATION; DYNAX CORPORATION; ARCHROMA U.S., INC.; CARRIER GLOBAL CORPORATION; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.; CLARIANT CORPORATION; AND DOE DEFENDANTS 1-20,<br><br>          Defendants. | No. 3:22-cv-00412-wmc |

## PLAINTIFF STATE OF WISCONSIN'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

# TABLE OF CONTENTS

I.  INTRODUCTION...................................................................................................... 1

II.  BACKGROUND .................................................................................................... 3

   A.  Factual Background.......................................................................................... 3

   B.  Procedural Background ................................................................................... 4

III.  LEGAL STANDARDS ........................................................................................ 5

IV.  ARGUMENT ........................................................................................................ 8

   A.  Step One: This Court Should Remand This Action After a Preliminary Assessment. ...... 9

   B.  Step Two: The Remand Motion Is Not Difficult, and the Transferee Court Has Not Routinely Adjudicated Identical or Similar Jurisdictional Issues..................................... 11

      1.  The jurisdictional issues are neither factually nor legally difficult. ........................... 11

      2.  The Tyco Defendants fail to show that the potential transferee court has resolved identical or similar jurisdictional issues. ............................................................. 12

   C.  Step Three: The Traditional Factors Weigh Against a Stay. ........................................... 13

      1.  A stay would harm the people of Wisconsin because this litigation is of overriding public importance. ...................................................................................... 14

      2.  The Tyco Defendants would not be prejudiced absent a stay. ................................... 15

      3.  Resolving the State's remand motion would conserve judicial resources.................. 16

   D.  The likelihood that the JPML might transfer this action is irrelevant to this Court's decision whether to stay............................................................................................. 18

      1.  The case law weighs against the Tyco Defendants' invitation to play a guessing game.................................................................................................................. 18

      2.  The Tyco Defendants' guessing game risks invading the JPML's province and rendering an advisory opinion. ................................................................................. 20

      3.  In any event, the Tyco Defendants are wrong that this action is "virtually certain" to be transferred to the MDL. ...................................................................................... 20

      4.  Even assuming this action is likely to be transferred, a stay is unwarranted under *Meyers*.................................................................................................................... 22

V.  CONCLUSION ...................................................................................................... 22

i

## I.    INTRODUCTION

The State of Wisconsin ("the State") brought this action in Wisconsin state court against eighteen named defendants that manufactured, marketed, and sold PFAS-containing products ("PFAS Products"), including a subset of defendants that manufactured aqueous film-forming foams ("AFFF") containing the chemicals PFOS and/or PFOA. In its complaint, the State alleges geographically widespread contamination, ranging from impacts to large bodies of water to specific sites where contamination has been detected and documented. Because of this contamination, the State brings exclusively state-law claims under its *parens patriae* authority. Defendants Tyco Fire Products LP ("Tyco") and Chemguard, Inc. ("Chemguard") (collectively, "Tyco Defendants") removed this action to this Court, relying on flawed jurisdictional theories relating to the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), and the doctrine of federal enclave jurisdiction. Because this Court lacks subject-matter jurisdiction, the State moved to remand. *See* ECF No. 12 (remand motion); ECF No. 13 (memorandum supporting remand motion).

Disregarding the special "sovereignty concerns that arise when a case brought by a state in its own courts is removed to federal court," *LG Display Co. v. Madigan*, 665 F.3d 768, 774 (7th Cir. 2011), the Tyco Defendants move for a stay of proceedings, asking this Court to avoid ruling on the State's remand motion. ECF No. 10 (Mot.). The Tyco Defendants contend the State should be denied any opportunity to air its jurisdictional objections until after the Judicial Panel on Multidistrict Litigation ("Panel," or "JPML") rules on the State's motion to vacate a conditional transfer order ("CTO") that—if not vacated—would transfer this action to the *In re Aqueous Film-Forming Foams Products Liability Litigation* multidistrict litigation ("*AFFF MDL*") in the District of South Carolina. MDL No. 2873 (D.S.C.). As the Tyco Defendants admit, their requested stay is lengthy because the JPML will not rule on the State's motion to vacate the CTO until December, at earliest. Mot. at 6 n.4.

Previous decisions by Seventh Circuit district courts show that this Court should hesitate to enter a stay where there is a pending CTO and the plaintiff challenges federal subject-matter jurisdiction. And under the exceptional facts of this case, where a state sovereign seeks remand of a state-law action to its own courts, this Court should be even more reluctant to stay these proceedings because of federalism and comity concerns. *See LG Display Co.*, 665 F.3d at 774.

The Tyco Defendants do not carry their Herculean burden to justify a stay under these circumstances. As the Tyco Defendants suggest, *see* Mot. at 8, this Court may find instructive the three-step framework identified by Judge Adelman in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis. 2001), where the court similarly considered whether to enter a stay given a pending CTO and a pending remand motion challenging federal subject-matter jurisdiction. First, because a court should hesitate to enter a stay while a movant seeks remand for lack of subject-matter jurisdiction, the court should conduct "a preliminary assessment of the jurisdictional issue." *Id.* at 1048. When the Court reviews the State's remand motion under the first step of *Meyers*, the Court will quickly find that the Tyco Defendants have flunked their burden to establish federal subject-matter jurisdiction. *See id.* at 1048. So, this action should be returned to district court, full stop.

Even if this Court proceeds to the second and third *Meyers* steps, a stay would be unwarranted. Second, this Court should resolve the State's remand motion because the jurisdictional issues at hand are neither factually nor legally difficult, and also because the District of South Carolina (the potential transferee court that oversees the *AFFF MDL*) has not routinely resolved similar or identical jurisdictional questions. Third, this Court should deny the Tyco Defendants' stay motion because the traditional factors do not favor a stay. Consider what this action is about: the State seeks judicial relief to safeguard Wisconsin residents from an unprecedented pollution problem that has caused pervasive health and environmental risks across the state. Litigation of such overriding public importance should not be delayed, especially as *all* parties benefit from speedy resolution of disputes. Meanwhile, the Tyco Defendants fail to explain how they would be prejudiced if this Court rules on the State's remand motion; after all, this Court

is perfectly well-equipped to decide whether it has federal subject-matter jurisdiction. And a stay would disserve judicial economy by delaying the resolution of an important threshold issue.

Because the Tyco Defendants cannot possibly meet all three steps of the *Meyers* framework and thereby justify a stay, they try to inject an irrelevant consideration into this Court's analysis. Namely, the Tyco Defendants argue that when deciding whether to stay this action, this Court should guess whether the JPML will transfer this action to the *AFFF MDL*. *See* Mot. at 1–2. If there is a high probability of a transfer, the Tyco Defendants contend, this Court should enter a stay. *Id.* But the Tyco Defendants' proposed guessing game is unsupported by the case law they cite. If anything, district courts have scrupulously *avoided* considering the likelihood of a transfer when considering a stay under similar circumstances. And rightly so. This Court's speculation about whether the JPML will transfer this action would amount to an advisory opinion that intrudes upon a decision reserved solely for the JPML, not this Court. And even if the Court considers the likelihood of a transfer, the Tyco Defendants are wrong that transfer is "virtually certain," *id.* at 2, or that this Court should enter a stay if transfer seems likely.

This Court should not entertain the Tyco Defendants' attempts to evade jurisdictional scrutiny. The Tyco Defendants' motion to stay proceedings should be denied.

## II.   BACKGROUND

### A.  Factual Background

The State's factual allegations are only tangentially relevant to the Tyco Defendants' motion to stay. These allegations are detailed in the State's remand motion, which is incorporated here by this reference. *See* ECF No. 12, 13. In short, PFAS are toxic, carcinogenic, and highly problematic pollutants that are virtually omnipresent in Wisconsin. *See* ECF No. 1-1 (Compl.) ¶¶ 1–10. PFAS pollution is ubiquitous partly because it was used in an extraordinarily wide array of PFAS Products. *Id.* ¶¶ 55-56 (describing the variety of PFAS Products including household consumer goods, personal care products, textiles, and use in industrial processes).

The State has sued eighteen defendants that manufactured, marketed, and sold PFAS Products, including the Tyco Defendants. The Tyco Defendants sold AFFF, only one of many different kinds of PFAS Products. Importantly, the scope of the State's suit matches the scope of the pollution problem it faces. Because PFAS pollution is pervasive statewide, the Complaint does not focus on any particular site. Rather, the Complaint takes a comprehensive, statewide approach.

### B.  Procedural Background

The State brought this action in Wisconsin state court, asserting only claims under Wisconsin common law. These claims include continuing public nuisance, continuing private nuisance, continuing trespass, negligence, strict products liability for failure to warn, and strict products liability for design defect. Compl. ¶¶ 13, 180–244.

The Tyco Defendants timely removed this action to this Court. *See* ECF No. 1 (Notice of Removal). They assert this Court has subject-matter jurisdiction under the federal-officer removal statute and the doctrine of federal enclave jurisdiction. *See generally id*. None of the sixteen other Defendants have since endorsed the Tyco Defendant's theories of federal subject-matter jurisdiction.

Shortly after removal, the Tyco Defendants notified the Clerk of the JPML that the State's suit might be a candidate for transfer to the *AFFF MDL*. *See AFFF MDL*, Notice of Potential Tag-Along (JPML ECF No. 1502);[1] JPML R. 7.1(a) (requirement to notify the Panel's Clerk about "potential tag-along actions"). The *AFFF MDL* consists of over a thousand actions relating to PFAS contamination arising out of the use of AFFF. The Panel's Clerk then entered a CTO that,

---

[1] The *AFFF MDL* has two dockets, both accessible via CM/ECF. One docket consists of proceedings before the JPML, which mostly concern whether actions should be transferred to the MDL. The case number for the JPML docket is "No. 2873." The other docket consists of post-transfer proceedings before the District of South Carolina, the transferee court. The case number for the District of South Carolina docket is "No. 2:18-mn-02873-RMG."

When citing docket entries on the JPML docket, this Memorandum will use the convention, "*AFFF MDL*, [document title] (JPML ECF No. [number])." When citing docket entries on the District of South Carolina's docket, this Memorandum will use the convention "*AFFF MDL*, [document title] (D.S.C. ECF No. [number])."

if finalized, would transfer this action to the *AFFF MDL. See AFFF MDL*, Notice of Filing of CTO and Publication of Briefing Schedule ("CTO-99") (JPML ECF No. 1513); *see also* JPML R.7.1(b) (Clerk's authority to enter a CTO). Anticipating the State's remand motion, the Tyco Defendants then moved to stay the proceedings in this Court. ECF No. 10.

In turn, the State has taken three actions. First, on August 25, 2022, the State timely filed a motion with the Panel to vacate the CTO. *AFFF MDL*, Motion to Vacate Conditional Transfer Order (CTO-99) (JPML ECF No. 1550); *see also* JPML R. 7.1(f) (party's right to move to vacate a CTO). In that motion, the State asked for two alternative forms of relief: (1) to vacate the CTO because transfer would disserve the interests set out in 28 U.S.C. § 1407(a), the statute describing the purposes of multidistrict litigation; and (2) to stay the effective date of the CTO until after this Court rules on the remand motion. *See generally AFFF MDL*, Motion to Vacate Conditional Transfer Order (CTO-99) (JPML ECF No. 1550). Briefing on the State's motion to vacate the CTO is scheduled to complete on September 21, 2022. *See AFFF MDL*, Notice of Filed Oppositions to CTO-99 and Publication of Briefing Schedule (JPML ECF No. 1526). As Tyco acknowledges, the Panel will not rule on the State's motion to vacate the CTO until after it hears the matter on December 1, 2022. *See* ECF No. 10 at 6 n.4. In other words, this action—including the State's remand motion—will remain before this court at least until December.

Second, the State moved to remand this action. *See* ECF No. 12, 13. Briefing on the motion is scheduled to complete on September 26, 2022. As noted, this Court is, and will be for the foreseeable future, the only court authorized to decide the remand motion and return this action to state court.

Third, the State, through this Opposition, opposes Defendants' motion to stay this action.

## III.   LEGAL STANDARDS

Three competing sets of legal considerations converge here: this Court's power to stay actions, this Court's obligation to assure itself that it has jurisdiction of the actions before it, and

the special federalism and comity concerns at play when an action brought by a state sovereign in its courts is removed to federal court.

First, a federal district court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). While a court has significant latitude to enter stays, its discretion is bounded by the requirement to "exercise" sound "judgment" by "weigh[ing] competing interests and maintain[ing] an even balance between them." *Id.* at 254–55.

Second, the U.S. Supreme Court has repeatedly stressed that courts should ensure that they have subject-matter jurisdiction over the actions before them. Attentiveness to jurisdictional limitations keep courts within "the bounds of authorized judicial action" and prevents them from "offend[ing] fundamental principles of separation of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Put another way, because jurisdictional limitations "spring[] from the nature and limits of the judicial power of the United States," they are generally "inflexible and without exception." *Id.* (quotations omitted). So, a court must confirm it has subject-matter jurisdiction before pressing forward with an action. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (courts may choose among non-merits threshold grounds to deny an audience to a case on the merits).

Third, when an action brought by a state sovereign in its own courts is removed to federal court, the removal gives rise to particular sovereignty and comity concerns. *LG Display Co. v. Madigan*, 665 F.3d 768, 774 (7th Cir. 2011) (identifying "the sovereignty concerns that arise when a case brought by a state in its own courts is removed to federal court"). "[C]onsiderations of comity make [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 21 n.22 (1983).

The State has not located any case where a court adjudicated a stay motion implicating all three of these considerations—i.e., when a defendant seeks (1) a stay, (2) that would prevent a court from hearing a remand motion that challenges federal subject-matter jurisdiction, (3) where the movant is a state sovereign that sued in its courts. But some courts, including district courts in the Seventh Circuit, have adjudicated stay motions under similar circumstances that implicate only the first two considerations—where a movant seeks a stay pending a CTO, the stay would prevent the court from hearing a remand motion based on a lack of subject-matter jurisdiction, and the movant is *not* a state sovereign.

In such cases, Seventh Circuit district courts have expressed great reluctance to enter stays. Judge Adelman's carefully reasoned and influential order in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044 (E.D. Wis.), which the Tyco Defendants also endorse, *see* Mot. at 8, is instructive. There, the court considered whether to adjudicate a remand motion challenging subject-matter jurisdiction, or wait for the JPML to decide whether to transfer the action. *Id.* at 1045–46. Although Judge Adelman recognized that he arguably was "empower[ed] . . . to stay the case without making any effort to verify jurisdiction," he was "reluctant to do so" for four reasons: (1) the "constitutional importance" of subject-matter jurisdiction; (2) the statutory command in 28 U.S.C. § 1447(c) that an action "shall be remanded" if subject-matter jurisdiction is absent; (3) the judicial efficiency benefits gained from early jurisdictional determinations; and (4) the "important [non-merits] effects" a stay can have "on the litigation." *Id.* at 1048. Accordingly, Judge Adelman found it necessary to undertake a "preliminary assessment" of federal subject-matter jurisdiction before he could even entertain the defendant's stay motion. *Id.* at 1049.

Based on these considerations, Judge Adelman developed a three-step test to decide whether to stay an action given a pending CTO and a pending remand motion for lack of subject-matter jurisdiction. As the Tyco Defendants implicitly recognize, Judge Adelman's test—while not binding precedent—has been highly influential both within and outside of the Seventh Circuit. First, "a court should first give preliminary scrutiny to the merits of the motion to remand." *Id.* "If

this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." *Id.*

Second, the court should determine whether the "the jurisdictional issue appears factually or legally difficult." *Id.* If not, the Court should decide the remand motion. *Id.* If the jurisdictional issue does appear difficult, the court should nonetheless decide the remand motion unless "identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Id.* at 1049. When describing this second step, Judge Adelman doubled down on his reluctance to stay the action: "*The only reason* to permit the transferee court to decide the jurisdictional issue would be to further judicial economy and consistency" in light of other cases presenting virtually identical jurisdictional issues. *Id.* (emphasis added).

Third, only if the court has not decided the remand motion under the first or second steps, the court should consider the substance of the stay motion. *Id.* at 1049. The court should consider the wide array of factors traditionally relevant to a stay—for example, judicial economy and the balance of equities. *Id.*

Like the Tyco Defendants, the State believes *Meyers*' methodical three-step approach provides an appropriate framework to guide this Court's exercise of discretion. But this Court should be even more skeptical of a stay than Judge Adelman, because he did not address a remand motion by a state sovereign seeking to return an action to its courts.

## IV.  ARGUMENT

Under Judge Adelman's three-step *Meyers* framework, resolving the Tyco Defendants' stay motion is simple. When the Court—at step one—preliminarily assesses the State's remand motion, the Court will find that the Tyco Defendants fall far short of their burden to establish federal subject-matter jurisdiction. Accordingly, this Court should remand this action and deny the Tyco Defendants' stay motion.

Even if this Court proceeds beyond the first step, a stay would nevertheless be unwarranted. Considering step two, the jurisdictional issues are not factually or legally difficult. The State's remand motion does not require the Court to weigh evidence or resolve factual disputes, and the applicable law—which mostly consists of a chorus of U.S. Supreme Court and Seventh Circuit precedents that squarely foreclose the Tyco Defendants' removal theory—is straightforward. And the District of South Carolina has not routinely resolved identical or similar issues in other actions that reside in the *AFFF MDL*. Turning to step three, a stay is unwarranted under the traditional stay factors. Judicial economy would be disserved by a stay. The balance of equities strongly favors early resolution of the State's remand motion, especially given the federalism and comity problems posed by the Tyco Defendants' poorly justified removal.

Because the Tyco Defendants cannot justify a stay under *Meyers*, they invite this Court to speculate about whether the JPML will transfer this action. The case law does not support the Tyco Defendants' guessing game, which is improper given the prohibition of advisory opinions and Congress's decision to vest transfer decisions solely in the JPML. And even if this Court tries to predict what the JPML will do, the State has compelling arguments against transfer that prevent any clear predictions, and the likelihood of a transfer would not affect the conclusion that a stay is unwarranted under the three *Meyers* steps.

## A. Step One: This Court Should Remand This Action After a Preliminary Assessment.

The State's remand motion, which this Court should examine first under Judge Adelman's framework, thoroughly describes why this Court lacks subject-matter jurisdiction under the Tyco Defendants' federal-officer removal and federal enclave jurisdiction theories. *See* ECF No. 13 (memorandum in support of remand motion). To avoid duplication, the State will provide only a summary here.

The Tyco Defendants fail three of the four requirements of the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). <u>First</u>, the Tyco Defendants fail to show that they ever "acted under"

federal officers: they fail to demonstrate that did anything more than follow federal regulations and subject themselves to federal oversight relating to PFAS-containing AFFF. It is well-established that even intensive regulatory oversight does not allow private parties like the Tyco Defendants to take advantage of the federal-officer removal statute. *See, e.g.*, *Lu Junhong v. Boeing Co.*, 792 F.3d 805, 808 (7th Cir. 2015). Notably, the Tyco Defendants do not allege that they ever sold a single drop of AFFF to the United States. *See generally* Notice of Removal.

Second, the Tyco Defendants do not show the required connection between the actions they took under federal officers and the State's suit. Because the Tyco Defendants fail to show they acted under federal officers, they axiomatically cannot establish the requisite connection. Even assuming the Tyco Defendants had shown they took *some* actions under federal officers relating to AFFF, the Tyco Defendants fail to show any nexus between such actions and the PFAS contamination in Wisconsin that gives rise to the State's claims.

Third, the Tyco Defendants fail to demonstrate that they have a colorable government-contractor defense. To assert a government-contractor defense to liability, a contractor that supplies a product to the United States must demonstrate that it warned the United States about all product dangers known to it but not the United States. *E.g.*, *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1185 (7th Cir. 2012). The Tyco Defendants do not allege that they warned the United States (or anyone else) about *any* of their products' dangers, much less allege that they met the strict warning requirements for a government-contractor defense. *See generally* Notice of Removal.

The Tyco Defendants likewise fail to establish federal enclave jurisdiction. First, the State does not seek judicial relief for any harms suffered on federal enclaves. Second, to the extent the State seeks judicial relief for harm suffered in Wisconsin's sovereign territory and outside of any federal enclaves, the Complaint makes clear that most of that harm was caused by conduct or occurrences that took place outside of federal enclaves. Courts agree that federal enclave jurisdiction is absent where, as here, the party asserting jurisdiction can demonstrate only a tenuous connection between the suit and a federal enclave.

If this Court agrees that it lacks subject-matter jurisdiction, its inquiry can end here. The Tyco Defendants' stay motion should be denied.

**B.   Step Two: The Remand Motion Is Not Difficult, and the Transferee Court Has Not Routinely Adjudicated Identical or Similar Jurisdictional Issues.**

Judge Adelman's second step is comprised of two distinct sub-steps. *See Meyers*, 143 F. Supp. 2d at 1049. First, the Court asks whether "the jurisdictional issue[s] appear[] factually or legally difficult." *Id.* Here, the issues are straightforward. *Id.* Second, if there are difficult issues, the Court asks whether the potential transferee court—here, the District of South Carolina—has resolved identical or similar jurisdictional issues. *Id.* Here, the court has not done so.

**1.   The jurisdictional issues are neither factually nor legally difficult.**

The State's remand motion is neither factually nor legally difficult. As for the facts, the State deliberately chose to present strong, straightforward, and limited grounds for remand. *See* ECF No. 13 at 9 (explaining that "[t]o aid this Court's efficient resolution of [the remand motion]," the State carefully curated its remand arguments). The only facts this Court needs to consider are in the State's Complaint and the Tyco Defendants' Notice of Removal. *Id.* So, the Court will not have to receive any evidence. The remand motion is based on the Tyco Defendants' failure to plead necessary jurisdictional facts—not on factual disputes between the parties. So, the Court will not have to resolve complicated factual questions.

The law is similarly straightforward. Federal-officer removal is not infrequently litigated, so the U.S. Supreme Court and Seventh Circuit have developed a thorough body of case law. For example, Tyco's invocation of federal-officer removal can be rejected with a single, straightforward rule: federal regulation does not mean a private party was acting under a federal officer.[2] While the Seventh Circuit has not provided much guidance on the federal-enclave

---

[2] Or, as the remand motion explains, this Court can remand on the grounds that Tyco failed to show that it discharged its duty to warn the United States about the dangers of its PFAS-containing AFFF. *See* ECF No. 13 at 18–21.

jurisdiction doctrine, the law is not difficult as it applies to the record. Although different courts have proposed slightly different standards, the Tyco Defendants' theory of federal-enclave removal is so tenuous that it falls apart under any of them. *Id.* at 21–25.

In sum, even if this Court proceeds past step one of Judge Adelman's framework, it should resolve the State's remand motion because it is not difficult.

### 2. The Tyco Defendants fail to show that the potential transferee court has resolved identical or similar jurisdictional issues.

Even if this Court proceeds to step two, sub-step two of the *Meyers* framework, it will find that the District of South Carolina has not resolved identical or similar jurisdictional issues. The Tyco Defendants purport to identify three similar cases in which the District of South Carolina resolved identical or similar jurisdictional issues. ECF No. 10 at 15–16. The Tyco Defendants refer to these decisions as *AFFF I*,[3] *AFFF II*,[4] and *AFFF III*.[5] These are the same decisions labeled as MDL Order 1, MDL Order 2, and MDL Order 3 in the Tyco Defendants' Notice of Removal and in the State's remand motion.

As for acting-under and connection requirements of federal-officer removal, AFFF *I* and *AFFF II* presented very different questions for the reasons explained in the State's remand motion: in those actions, the parties agreed that the defendants invoking federal jurisdiction had sold AFFF to the United States. ECF No. 13 at 15 (citing *AFFF I* at 4 (plaintiff "allege[d] that Tyco manufactured and sold AFFF products . . . to the U.S. military"); *AFFF II* at 4 (removing defendants had "sold a portion of the AFFF products" at issue "to the U.S. military")). *AFFF III* is distinguishable because the court's order did not consider the voluminous case law holding that mere compliance with federal regulations does not support federal-officer removal, and because

---

[3] *AFFF MDL*, Order (D.S.C. ECF No. 103).

[4] *AFFF MDL*, Order (D.S.C. ECF No. 320).

[5] *AFFF MDL*, Order (D.S.C. ECF No. 325).

the plaintiff was not a state sovereign seeking remand to its own courts. *Id.* at 16 (citing *AFFF III* at 4).

As for the colorable-federal-defense element of federal-officer removal, *AFFF I* is the only order where the District of South Carolina considered whether the removing defendant had met their burden to show that they had discharged their duty to warn. *AFFF I* at 4–5. That analysis is distinguishable because the Court considered a different factual record. Regardless of what was at issue in *AFFF I*, the record in *this action* firmly establishes that the United States' knowledge of the dangers of AFFF-containing PFAS severely lagged the Tyco Defendants' knowledge at all relevant times, and that the Tyco Defendants never warned *anyone*, much less the United States, of the dangers of its PFAS-containing AFFF. ECF No. 13 at 18–21.

As for federal-enclave jurisdiction, *AFFF I* is the only order considering the doctrine. The court's analysis is distinguishable because it did not consider any argument that the plaintiff did not seek relief for harm occurring inside the federal enclave, or any argument that the plaintiff's harms were overwhelmingly caused by transactions and occurrences that occurred outside of any federal enclaves. *AFFF I* at 6–7.

Even assuming this Court reaches this step of the *Meyers* framework, Tyco fails to show that *AFFF I*, *AFFF II*, and *AFFF III*—cases involving different allegations and different notices of removal—share similar or identical issues. This Court can readily confirm by examining these orders that the District of South Carolina has not meaningfully considered the arguments the State makes in its remand motion.

## C. Step Three: The Traditional Factors Weigh Against a Stay.

The final step of Judge Adelman's framework consists of the traditional factors a court weighs when considering a stay. These include—but are not limited to—judicial economy; prejudice to the moving party if the action is not stayed; and potential prejudice to the non-moving party from a stay. *Meyers*, 143 F. Supp. 2d at 1049. These factors heavily favor the State.

**1. A stay would harm the people of Wisconsin because this litigation is of overriding public importance.**

The Tyco Defendants suggest that any delay caused by a stay would be inconsequential because litigating a case of this size and complexity will take time. *See* Mot. at 18. In doing so, the Tyco Defendants ignore the gravity of the harm they allegedly caused. The State's suit is large and complicated precisely because Wisconsin residents face an unprecedented PFAS pollution problem that has pervasively threatened health, safety, and welfare. Equity does not favor delaying an action of such overriding public importance. Indeed, the magnitude of this case is all the more reason to quickly resolve the important threshold issue of which court system should handle this action. By ruling on the State's remand motion, this Court will eliminate a key roadblock that prevents this action from proceeding.

This is especially true because the Tyco Defendants seek a lengthy stay. The JPML will not decide whether to transfer this action to the *AFFF MDL* until December, at earliest. *See* ECF No. 10 at 6 n.4. If this action is not transferred, this Court will likely schedule a hearing on this motion in late 2022 or early 2023. If this action is transferred, the District of South Carolina will likely be unable to consider this Motion for some time, because the court is slated to oversee voluminous motions practice in advance of the *AFFF MDL*'s first bellwether trial in the spring of 2023. *See AFFF MDL*, Case Management Order No. 19 (D.S.C. ECF No. 1844). The State may well be forced to wait until late 2023 for any potential movement of its case in the MDL, at the earliest. And the District of South Carolina might need even more time: while that court has ably overseen the *AFFF MDL*, sound case management cannot alter the basic fact that the proceeding contains thousands of actions. If this action is remanded, the State would be forced to begin anew in state court.

The Tyco Defendants are wrong, moreover, to suggest that because the State does not seek emergency judicial relief, its claims are not time sensitive. *See* Mot. at 18. This argument ignores that the State has initiated a massive response to PFAS pollution that involves numerous state agencies and enlists academic institutions, first responders, businesses, local governments, and

other stakeholders. Compl. ¶ 11, 167–79. The State is not doing so because it finds PFAS pollution to be a mere curiosity. The State must safeguard its residents from grave and potentially life-threatening harm. *Id.* ¶¶ 63 (even low doses of PFAS can cause cancer, liver damage, endocrine harm, immune harm, reproductive harm, and myriad other potentially fatal injuries to people).

Of course, while a delay would be especially harmful to the people of Wisconsin, it would also harm every other party. All parties have an interest in the speedy resolution of civil actions. So, a stay would prejudice even the Tyco Defendants.

### 2.  The Tyco Defendants would not be prejudiced absent a stay.

The Tyco Defendants, as with the other defendants, will not be prejudiced by proceeding with this matter. The Tyco Defendants only vaguely argue that without a stay, they would be subject to "duplicative litigation" across multiple fora. Mot. at 18–19. While superficially appealing, the Tyco Defendants' argument defies common sense. Regardless of whether the JPML transfers this action, the State will press its remand arguments, and the Tyco Defendants will oppose them. *Id.* The Tyco Defendants will be required to expend the same efforts regardless of whether this Court or the District of South Carolina rules on the State's remand motion. If this Court rules on the State's remand motion, its holdings will constitute the law of the case; the Tyco Defendants will not be forced to relitigate these issues even if this action is later transferred to the District of South Carolina.

The Tyco Defendants are also wrong that if this Court rules on the remand motion, it would be prejudiced by "inconsistent rulings."[6] Federal-question jurisdiction is determined by reference to the record in each case: here, the Complaint and the Notice of Removal. So, the State's remand motion is based on the Tyco Defendants' failure—given the record in this case—to meet well-

---

[6] The Tyco Defendants state that they will also be subject to "inconsistent . . . obligations on common issues." Mot. at 19. It is altogether unclear what the Tyco Defendants mean by an "inconsistent obligation." The Tyco Defendants' liability to the State will be determined in this civil action, not any other one.

established requirements for federal-officer removal and federal enclave jurisdiction. The State does not ask this Court to make any new law. There is no material risk of inconsistent rulings.

Finally, the Tyco Defendants hypothesize that multidistrict litigation is designed to protect *defendants* from litigation burdens and that the State's remand motion tries to "undermine" that purpose. ECF No. 10 at 18–19. To the contrary, the multidistrict litigation statute provides no privileged place for defendants. Congress has directed the JPML to pursue broad objectives: the "convenience of parties and witnesses" and the "just and efficient conduct of . . . actions." 28 U.S.C. § 1407(a). Here, the State and the Tyco Defendants can conveniently litigate jurisdictional issues before this Court. As the State will explain in the next section, early resolution of the State's remand motion can only conserve judicial resources. And far from trying to undermine the multidistrict litigation process, the State presses a proper challenge to federal subject-matter jurisdiction before the *only* court that is currently empowered to make jurisdictional determinations.

The Tyco Defendants do not show any prejudice absent a stay, much less prejudice that overrides the State's strong interest in rapidly prosecuting this action and protecting its residents.

### 3. Resolving the State's remand motion would conserve judicial resources.

Resolving the State's remand motion would conserve judicial resources. When the Court examines the remand motion, it will likely find that glaring jurisdictional defects warrant remand. If this Court remands this action, its order would obviate the need for the JPML to rule on the State's motion to vacate the CTO, preserving the resources of the *seven* bench officers who serve on the Panel. *See* 28 U.S.C. § 1407(d) (composition of the JPML).

Even if this Court ends up denying the State's remand motion, the Court's efforts would not be wasted. Regardless of whether this action is subsequently transferred to the *AFFF MDL*, the Court's holdings will continue to be the law of the case, and this Court would have contributed to advancing this action toward its conclusion.

The prudence of resolving the remand motion is reinforced by the fact that the JPML has set a schedule for resolving transfer issues that gives this Court sufficient time to rule on the State's remand motion and decide whether there is federal subject-matter jurisdiction. The State agrees with the Tyco Defendants that even if the JPML decides to transfer this action to the *AFFF MDL*, any transfer decision would occur after the JPML hears the matter on December 1. *See* ECF No. 10 at 6 n.4. Put another way, this Court need not fear that the JPML will order a surprise transfer of this action to the JPML while this Court is evaluating the State's remand motion.

The Tyco Defendants counterargue that the District of South Carolina is currently considering a partial summary judgment motion about a government-contractor defense, and that it would therefore be "wasteful" for this Court to "duplicate that effort" by ruling on the State's motion for remand. Mot. at 17–18. In so claiming, the Tyco Defendants gloss over glaring differences between that motion and the State's remand motion. The partial summary judgment motion in the *AFFF MDL* rests on a completely different factual record as the State's remand motion. The State's remand motion concerns only the facts in the limited record developed so far: the Complaint and the Tyco Defendants' Notice of Removal. By contrast, the partial summary judgment motion in the *AFFF MDL* is based on a colossal evidentiary record. Put simply, even Judge Gergel's analysis of the government contractor defense in the *AFFF MDL* will not help him determine whether federal-officer removal is appropriate in this action. Even assuming that the partial summary judgment motion in the *AFFF MDL* is somehow relevant, the government-contractor defense is only one of four elements the Tyco Defendants must show to invoke the federal-officer removal statute (and the government-contractor defense is irrelevant to federal enclave jurisdiction). *See Ruppel*, 701 F.3d at 1180 (elements of federal-officer removal). So, the proceedings on the motion for summary judgment in the *AFFF MDL* cannot resolve the State's remand arguments.

17

In sum, resolving the State's remand motion can only conserve judicial resources. This factor, along with the other traditional factors, strongly weigh against a stay under the third *Meyers* step.

**D.  The likelihood that the JPML might transfer this action is irrelevant to this Court's decision whether to stay.**

Because the Tyco Defendants cannot prevail under the three-step *Meyers* framework, they inject an irrelevant consideration: they argue that when deciding whether to stay this action, this Court should guess whether the JPML will transfer this action to the *AFFF MDL*. *See* Mot. at 1–2.

The Tyco Defendants invitation to play a guessing game is unsupported by the case law they cite. If anything, the case law demonstrates that courts have scrupulously *avoided* considering the probability of a transfer in similar circumstances. And for good reason: the transfer decision rests solely in the JPML's able hands. Tyco asks this Court to invade the JPML's province by entering an advisory opinion about the strength of the parties' transfer arguments.

Even if the Court considers the probability of a transfer, Tyco is wrong that this action is "virtually certain" to be transferred to the MDL. *Id.* at 2. Moreover, even if this Court finds there is a high likelihood of transfer, that finding would not alter the conclusion that under the traditional stay factors, this Court should deny the stay motion and resolve the State's remand motion.

**1.  The case law weighs against the Tyco Defendants' invitation to play a guessing game.**

The Tyco Defendants urge this Court—when ruling on the stay motion—to guess whether the JPML will decide to transfer this action to the *AFFF MDL*. But this argument is unsupported by the case law the Tyco Defendants cite.

Principally, the Tyco Defendants suggest that in *Miller v. Bayer HealthCare Pharmaceuticals*, No. 4:15-cv-1401, 2015 WL 5572801, at *1 (E.D. Mo. Sept. 22, 2015), the court endorsed considering the likelihood of a transfer when deciding whether to stay an action in light

of a pending CTO and a pending remand motion. Mot. at 16. The Tyco Defendants overread *Miller*. Although the *Miller* court did consider the likelihood of transfer when deciding whether to stay the action, the court did so reflexively and without considering whether it was prudent to opine on the likelihood of transfer. 2015 WL 5572801, at *1.

Contra *Miller*, Seventh Circuit district courts (including Judge Adelman in *Meyers*, 143 F. Supp. 2d at 1053) have hewed closely to the three-step framework and avoided opining on whether the JPML is likely to transfer an action.[7] District courts outside of the Seventh Circuit have done the same.[8] If anything, the overwhelming weight of the case law demonstrates that this Court should not consider whether the JPML is likely to transfer this action when evaluating the Tyco Defendants' stay motion.

---

[7] These include all of the decisions that the Tyco Defendants stringcite. *Uhle v. Depuy Orthopaedics, Inc.*, No. 21 C 5798, 2021 WL 6622512, at *1 (N.D. Ill. Nov. 19, 2021) (avoiding any statement about the likelihood of a transfer); *Bad River Band of Lake Superior Chippewa v. Purdue Pharma L.P.*, No. 18-cv-1017-jdp, 2019 WL 252026, at *1–2 (W.D. Wis. Jan. 17, 2019) (noting that the defendants "hope[] to have the case transferred," but declining to opine on the probability of a transfer and equally considering both the possibility of transfer and non-transfer); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. McKesson Corp.*, No. 18-cv-286-jdp, 2018 WL 2390120, at *1–2 (W.D. Wis. May 25, 2018) (following the same approach as *Bad River Band*) ; *Est. of Hoholek v. AbbVie, Inc.*, No. 2:14–CV–405, 2014 WL 7205586 (N.D. Ind. Dec. 17, 2014) (considering only the fact that there was a pending CTO, and not examining the likelihood that the action would actually be transferred); *Weinke v. Microsoft Corp.*, 84 F. Supp. 2d 989, 989–90 (E.D. Wis. 2000).

[8] Once again, these include all of the decisions that the Tyco Defendants stringcite. *Marathon Petroleum Co. LP v. 3M Co.*, No. 22-10117, 2022 WL 821667, at *1–2 (E.D. Mich. Mar. 17, 2022) (choosing not to consider the likelihood of a transfer); *Tibbetts v. 3M Co.*, No. 21-2400, 2022 WL 252685 (E.D. La. Jan. 27, 2022) (declining to opine on the likelihood even though "the defendants submit[ted]" that "the JPML will likely order transfer"); ; *Saracco v. State of Alaska*, No. 1:21-cv-00015-SLG, 2021 WL 5567417 (D. Alaska Nov. 29, 2021) (choosing not to consider the likelihood of a transfer); *Gaston v. State of Alaska*, No. 4:21-cv-00019-SLG, 2021 WL 5567419 (D. Alaska Nov. 29, 2021) (same).

### 2. The Tyco Defendants' guessing game risks invading the JPML's province and rendering an advisory opinion.

It is unsurprising that courts have avoided guessing whether the JPML might transfer an action to an MDL. The JPML has sole authority to decide transfer issues; this Court has no role in the process. *See* 28 U.S.C. § 1407(a), (c) (statutory provisions governing transfer). If this Court plays the Tyco Defendants' guessing game, it would invade the JPML's province and render an advisory opinion that may end up conflicting with the JPML's actual transfer decision. In doing so, this Court would overstep its limited Article III powers. *See Matlin v. Spin Master Corp.*, 979 F.3d 1177, 1181 (7th Cir. 2020) (clarifying that the rule against advisory opinions stems from courts' jurisdictional limitations). So, this Court should ignore the Tyco Defendants' arguments based their supposition that a transfer is highly likely.

### 3. In any event, the Tyco Defendants are wrong that this action is "virtually certain" to be transferred to the MDL.

In any event, the Tyco Defendants overestimate the likelihood that this action will be transferred to the *AFFF MDL*. The Tyco Defendants' miscalculation rests on their erroneous belief that the JPML has adopted a categorical rule that all actions involving AFFF must be sent to the *AFFF MDL*. Mot. at 6–7.

The Tyco Defendants claim this rule lurks in the Panel's 2018 order establishing the *AFFF MDL*. It is not. There, the Panel used the term "AFFF actions" to refer to specific actions listed on a schedule to the order. *AFFF MDL*, 357 F. Supp. 3d 1391, 1392–94 (J.P.M.L. 2018) (actions on Schedule A are "AFFF actions," and actions on Schedule B are "non-AFFF actions"). The Panel rejected arguments by certain plaintiffs that factors unique to their cases weighed against consolidation. *Id.* at 1395–96. In that context, the JPML remarked that "[w]e will not exclude any of the AFFF actions from the MDL." *Id.* at 1395. The Tyco Defendants misquote the JPML's remark as standing for an inflexible rule that all actions involving AFFF must belong in the MDL. *See* Mot. at 6–7 ("The JPML has explained that it 'will not exclude any of the AFFF actions from the MDL.' And this is clearly an 'AFFF action,' because on the face of the Complaint Plaintiff's

claims expressly relate in part to the use of PFAS-containing AFFF."). That is not a fair reading of the Panel's order, which did not use the term "AFFF actions" in a general sense.

Instead, Congress has commanded the JPML to weigh a wide range of factors when deciding whether to transfer an action to an MDL. The Panel is required to consider whether transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Consonantly, the JPML has frequently held that the presence of *some* common issues does not warrant coordination; rather, common issues must be substantial enough that the benefits of coordination outweigh the downsides. *E.g.*, *In re Spray Polyurethane Foam Insulation Prods. Liab. Litig.*, 949 F. Supp. 2d 1364 (J.P.M.L. 2013).

Here, the State has compelling arguments that even though this action implicates AFFF in limited part, it is a poor fit for the *AFFF MDL.* For example, the State's case is a massive statewide action; "[n]o corner of the State has been left untouched." Compl. ¶ 10. So, even absent transfer, this action achieves substantial economies of scale because it addresses a broad swath of injuries, and the usual efficiency and convenience benefits of further coordination are quite limited. Also, the State's Complaint makes clear that its PFAS-related claims are about far more than just AFFF. The State has specific, detailed allegations about contaminated sites that have nothing to do with AFFF, *e.g.*, *id.* ¶ 144(f), and seeks relief for injuries sustained because of *all* PFAS Products, *id.* ¶ 5, including PFAS incorporated into a wide array of non-AFFF consumer and industrial products, *id.* ¶ 55. Consequently, the State's action presents numerous questions and issues that are not held in common with other actions in the *AFFF MDL.* Once again, this means the usual benefits of coordination are absent.

So, the Tyco Defendants are wrong to portray transfer as a foregone conclusion. The uncertainty of transfer compounds the problems that inhere in the guessing game the Tyco Defendants urge.

**4. Even assuming this action is likely to be transferred, a stay is unwarranted under *Meyers*.**

Even if this Court considers whether the JPML might transfer this action to the *AFFF MDL*, and even if this Court accepts the Tyco Defendants' speculation that the Panel will inevitably effect a transfer, a stay would nevertheless be unwarranted under the three *Meyers* steps.

Recall that under the first step, this Court should preliminarily assess the strength of the State's remand motion. Even assuming the JPML will transfer this action, the Tyco Defendants' arguments for federal subject-matter jurisdiction would remain unmeritorious. The Court should grant the State's remand motion at the first step.

Likewise, the second *Meyers* step would remain unchanged. Under the second step's first sub-step, the State's remand motion would not pose difficult factual or legal questions. Under the second sub-step, the District of South Carolina has not routinely resolved similar or identical issues.

If the Court reaches the third step and considers the traditional stay factors, a stay would be unwarranted even if a transfer seems likely. The State would continue to have an overwhelming public interest in speedy resolution that a stay would gravely prejudice. The Tyco Defendants would not face any real prejudice absent a stay; regardless of whether this Court or the District of South Carolina adjudicates the remand motion, the Tyco Defendants would bear the same burden to oppose it. And judicial efficiency considerations would continue to favor a resolution of the State's remand motion by this Court, which would remain—until the transfer is effective—the *only* court empowered to return this action to the proper judicial system.

In sum, even if this Court assumes that the Panel will transfer this action, that assumption would not warrant a stay under the three-step *Meyers* framework.

## V. CONCLUSION

For the foregoing reasons, the State respectfully requests that the Court deny the Tyco Defendants' motion for a stay.

Dated: August 29, 2022

*/s/ Stephanie D. Biehl*

**SHER EDLING LLP**

Stephanie D. Biehl
100 Montgomery Street, Suite 1410
San Francisco, CA 94104
Tel.: (628) 231-2507
Email: stephanie@sheredling.com

Joshua L. Kaul
Attorney General of Wisconsin

R. Duane Harlow
Assistant Attorney General
State Bar # 1025622

Bradley J. Motl
Assistant Attorney General
State Bar # 1074743

Sarah C. Geers
Assistant Attorney General
State Bar # 1066948

Post Office Box 7857
Madison, Wisconsin 53707-7857
Tel.: (608) 266-2950
Fax: (608) 294-2907
Email: harlowrd@doj.state.wi.us
          motlbj@doj.state.wi.us
          geerssc@doj.state.wi.us